Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Attorney for Defendant:
JUMSHER SAROYA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>JUMSHER SAROYA,<br><br>  Defendant. | Case No. CR19-00275-ODW-07<br><br>**SENTENCING MEMORANDUM; EXHIBITS**<br><br>DATE: FEBRUARY 22, 2021<br>TIME: 2:30 P.M.<br>JUDGE: HON. OTIS D. WRIGHT, II |

Defendant Jumsher Saroya, by and through counsel of record, Stanley I. Greenberg, hereby submits his Sentencing Memorandum, along with relevant Exhibits.

Dated: February 3, 2021          Respectfully submitted,

                                  s/Stanley I. Greenberg
                                  Stanley I. Greenberg
                                  Attorney for Defendant
                                  Jumsher Saroya

# **TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………..………………3

II.  FACTUAL SUMMARY……………………..……………………..…………3

III. APPLICABLE SENTENCING GUIDELINES…………………….…..………5

    1. Agreed Upon Variance in Plea Agreement………………………………….5

    2. Safety-valve Adjustment………………………………………………..……..5

    3. Minor Role Adjustment Pursuant to §§ 3B1.1 and 3B1.2……………...…5

    4. Post-Offense-Rehabilitation………………………………………………....8

    5. Variance justified due to fact that the drug Guidelines overstate the severity of the sentence, because of two gross and unwarranted disparities in their treatment of methamphetamine……………….…………………………..9

IV.  MR. SAROYA'S GOOD CONDUCT & GOOD CHARACTER JUSTIFY A NON-CUSTODIAL SENTENCE………………….……………10

V.   CONCLUSION………………………………………………………..…………10

VI.  EXHIBITS

# SENTENCING MEMORANDUM

## I.

## Introduction

We are confident this Court is thoroughly familiar with the law and various rules relating to sentencing. Hence, we shall spare the Court the burden of plowing through pages of boilerplate regarding the Sentencing Guidelines, § 3553 (a), Commentary and volumes of case law. Instead, we shall focus and get to the point: We submit this defendant is deserving of a non-custodial sentence for the reasons set forth in the discussion below and exhibits attached to this document.

## II.

## Factual Summary

Mr. Saroya was charged in a federal indictment alleging a drug conspiracy among 16 people, encompassing 78 overt acts, beginning on an unknown date and continuing until May 3, 2019. Mr. Saroya's sole involvement was a 3 week period in mid-March until April 5, 2018. (See Indictment, Overt Acts 33-40). His role was limited. He was to travel to the Los Angeles area from Canada, meet with co-defendant Michael Shepherd (who was then unknown to him). Both men would then retrieve some drugs from a storage locker, and deliver them, per directions, elsewhere. Neither completed their assignment. Both were arrested. Both confessed. Both were prosecuted in state court. Saroya was arrested and prosecuted in Kern County. Shepherd in San Bernardino. Both

served State time. Saroya's prosecution in State Court was based on the identical acts charged against him in this case (See Information, Exhibit A, and compare to Indictment, Overt Acts 33-40). He was sentenced in Kern County to 6 years, and eventually credited with serving 893 days (about 74 months). (See Sentence Information, Exhibit B). But for the dual sovereignty doctrine, that would have normally been the end of it.

But once the State was done with him, he was sent to Federal court to face charges here. The Court found he was neither a flight risk nor a danger to the community, and released him on bail. Thus, he has been on supervised release, in full compliance, with no violations, since early November, 2019. (PSR, ¶ 22), He has been and still is living with relatives in Arizona, attending school and working. (PSR, ¶ 74).

At the time, Mr. Saroya was 22 years old, working in the construction industry as a plumber's assistant. He had no prior criminal history. He was a normal, honest young man trying to find his place in the world. He was not a drug dealer.

He got laid off work and therefore found himself out of income and out of money. While looking for work he entertained himself playing basketball. One of the men he met on the court came to know Mr. Saroya's financial situation, and offered him an opportunity to make some money. That is what led to his involvement here. This is also what he told the FBI upon his arrest. A more detailed discussion appears in the PSR (and likely will be in the Government's Position paper).

//

## III.

## Applicable Sentencing Guidelines

We understand the Court must consider and calculate the Sentencing Guidelines. For the most part, they are set forth in the Pre-Sentence Report filed by the Probation Department. However, we believe there are additional factors that apply here. Indeed, the plea agreement specifically contemplates possible additional departures, adjustments and variances. See Plea Agreement, ¶'s 13-14.

(1) <u>Agreed upon variance in Plea Agreement</u>: A -2 level variance should be applied pursuant to ¶ 15 of the written Plea Agreement (Document 196). This is due, as explained in ¶ 15, to the unprecedented crisis created by the backlog of cases and issues associated with the coronavirus (as more fully explained in ¶ 15); and,

(2) <u>Safety-valve adjustment</u>: We anticipate the Government's pleading and the PO's subsequent letter will confirm that Mr. Saroya is eligible and has complied with all requirements, such that the -2 level Safety Valve adjustment should be applied; and,

(3) <u>Minor Role Adjustment pursuant to §§ 3B1.1 and 3B1.2</u>: The PSR suggested there was no evidence to support the application of a role adjustment. See PSR, ¶¶'s 49-50. To the contrary, we believe Probation may have overlooked Mr. Saroya's conduct that fits perfectly within the language of the Guideline commentary regarding minor role adjustment. It describes perfectly the conduct that would

justify a minor role adjustment; and, at the same time, describes perfectly the conduct of Mr. Saroya. We suggest that the undisputed evidence, coupled with the guidance of the Guideline commentary, supports the conclusion that Mr. Saroya should get a minor role adjustment.

The evidence is that Mr. Saroya is a youthful, first-time, non-violent offender. He was not an organizer nor leader nor supervisor nor negotiator nor salesman. He had no decision-making authority. He was a one-time courier. He was sent to Los Angeles to remove drugs from a storage locker (along with co-defendant Shepherd) and deliver them elsewhere as they were both told. He did not know the customers. His participation in this offense was limited to the "transportation and storage" of drugs. That is the perfect definition of one who is entitled to a minor role adjustment. *Infra*.

Additionally, Mr. Saroya received no compensation for his conduct. Because of all of those factors, he is therefore eligible for a minor role adjustment. USSG § 3B1.2, comment, n. 3, provides: **". . . a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs**," may receive an adjustment under this guideline. (Emphasis added). That is the perfect description of Mr. Saroya's conduct in this case.

Moreover, USSG § 3B1.2, comment, (n.3), provides, that in making its "fact-based determination," the Court's decision should be based on the totality of the circumstances, including, *inter alia*:

**"(ii) the degree to which the defendant participated in planning or organizing the criminal activity;**

**(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;**

**(v) the degree to which the defendant stood to benefit from the criminal activity."** (Emphasis added)

This record is clear: Mr. Saroya's participation was limited to transporting and storing the drugs. He had no participation in planning or organizing the criminal activity. He neither exercised decision-making authority nor influenced decision-making authority. He understood he would benefit financially, but he never received a dime. Accordingly, we submit the minor role adjustment should be applied to Mr. Saroya, as directed in the above commentary to USSG §3B1.2.

We stress that Mr. Saroya (like Mr. Shepherd) was a "mere conduit." Thus, we urge the Court to apply the primary goal of §3B1.1: to make a "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *U.S. v. House*, 883 F.3d 720, 724 (7th Cir. 2018); *U.S. v. Colon*, 919 F.3d 510, 518-19 (7th Cir. 2019). We submit that should include a minor role adjustment, as was done with Mr. Shepherd (See October 5, 2020 Reporter's Transcript of Shepherd sentencing, at p. 24, ll.22-25.).

(4) <u>Post-Offense-Rehabilitation</u>:  Mr. Saroya has been on supervised release since November 4, 2019.  As noted in the PSR, he has been in full compliance, working and attending school. (PSR, ¶'s 72, et. seq.). Also, Mr. Saroya's letter to the Court (See Ex. D), as well as the letters from his family and friends (See Ex. E), clearly establishes his efforts to turn his life around, and the lessons he has learned.

We suggest this is significant because as the Court considers what sentence to impose, it will likely consider what conduct to expect from Mr. Saroya in the future. This extensive period of good behavior with a view towards self-improvement is an excellent indicator of what the Court can expect of him in the future.  Numerous courts have made the point that considerable weight should be given to defendants who have a lengthy period of pre-trial supervision.  *U.S. v. Ray*, 578 F.3d 184 (2d Cir. 2009).

Good conduct during a lengthy delay between offense and sentencing tends to mitigate the sentence for this reason.  It provides the Court with a reliable track record of what to expect of the defendant's conduct in the future.  It undermines the notion that lengthy imprisonment is needed to deter and/or rehabilitate.   *U.S. v. Johnson*, 588 F. Supp.2d 997 (S.D. Iowa 2008).

This concept has been accepted by the Supreme Court.  *In Pepper v. U.S.,* 131 U.S. 1229 (2001), the Court essentially abrogated U.S.S.G. § 5K2.19, which prohibited downward departures for post-offense rehabilitation efforts, even if exceptional.

Therefore, courts are now free to weigh post-offense rehabilitation, including the passage of time, while on supervised release.

(5) <u>Variance justified due to fact that the drug Guidelines overstate the severity of the sentence, because of two gross and unwarranted disparities in their treatment of methamphetamine</u>:

   (a) One disparity is the Guidelines' treatment of methamphetamine based on purity and net weight.  There is no empirical basis for this.  *U.S. v. Nawanna*, 321 F. Supp. 943, 947-55 (N.D. Iowa); *U.S. v. Carillo*, 440 F. Supp. 3d 1148, 1150-56 (E.D.Ca. 2020) (collected cases cited therein to the same effect).

   (b) The other is the Guidelines' treatment of methamphetamine versus nearly every other drug.  See U.S.S.G. § 2D1.1 cmt. n. 8 (D) (2018).  Consider that one gram of meth of at least 80% purity, which is ubiquitous in today's market, equals 20 kilograms of converted drug weight—far more than heroin, fentanyl, PCP, crack cocaine and every other drug except LSD and amphetamine. *Id*.  That makes no sense.  *U.S. v. Bean*, 371 F. Supp. 3d 46, 49-54 (D.N.H. 2019).

Attached hereto as Exhibit C is an Order and opinion of the U.S. District Court for the Eastern District of CA: *U.S. v. Raul Carrillo*, No. 2:17-cr-00082-KRM.  This opinion discusses and applies the variance issue urged here, and concludes there <u>should</u> be a variance for methamphetamine, based on a policy difference applied to the Guidelines.  We submit that for the same reasons the same variance should apply in this case.

## IV.

## Mr. Saroya's Good Conduct & Good Character

## Justify a Non-custodial Sentence

Mr. Saroya has written a letter of allocution to the Court. It is attached as Exhibit D. He has explained his background, education and history to the Court. He also explained how he got himself in this mess. More importantly perhaps, he explains the lessons he has learned, the steps he has taken to avoid repetition, and his plans for a law-abiding future.

Additionally, attached as Exhibit E are several letters from his family and friends, *inter alia,* vouching for his good character, expressing their surprise in learning of his conduct in this case, and their observations of what he has done to correct his future path to assure this does not reoccur.

In sum, given the Court's assigned duty to "make a commonsense judgment" regarding the defendant's level of culpability, plus the other factors cited above, we submit this is a case where a non-custodial sentence is not only justified, but also, earned.

## V.

## CONCLUSION

We all know the statutory standard by which the Court is to impose sentence: "Sufficient but not greater than necessary" to comply with the enumerated purposes of sentencing. Frankly, that has become a cliché; and used like a ritual mantra, especially

since the passage of the Guidelines. Courts don't really need that statutory instruction to perform their duties.

Long before the Sentencing Guidelines and the passage of 18 U.S.C. §3553 (a), judges simply used their experience and wisdom to make a commonsense judgment and impose an appropriate sentence. It is conceptually similar to parenting a child who misbehaves, albeit in a more formal setting. Parents do not need a set of formal "guidelines" to raise and discipline their children. In each case, commonsense tells us what the result should be: "sufficient but not greater than necessary." And the purposes are self-evident. The job of a judge (and a parent) is simply to use commonsense; to evaluate the offense, the offender and his history and future prospects, and impose a sanction sufficient but not greater than necessary.

So we ask, exactly why is it "sufficient and necessary" to impose a 10 year prison sentence when the defendant is the following:

1. First time offender;

2. Youthful (22 at the time of the offense);

3. Non-violent;

4. Who made no profit;

5. Who played a minor role;

6. Who immediately confessed and acknowledged his guilt when arrested;

7. Who was prosecuted and pled guilty to the identical acts in State Court;

11

8. Who served the prison sentence imposed by a state judge who also no doubt thought it was "sufficient and necessary"

9. Who was found NOT to be a flight risk or danger to the community in federal court and released on bail;

10. Who has been on supervised release since November, 2019;

11. Who has been in full compliance of the conditions of his bail;

12. Who has been working and attending college with career plans in place; and

13. Who has no need for further "rehabilitation".

What further lesson(s) is he likely to learn by spending 10 years in a federal prison that he has not already learned? Wasn't the state sentence he served "sufficient?" It obviously was for the State of California, and it was the very same crime. Does anyone really think he is planning to go on a crime spree as soon as the sentencing is over? We submit the Probation Office has done a very thorough job in describing the case history and Mr. Saroya's history. But other than the ritual incantation, we submit the PSR is void of any real substance to justify a term of substantial incarceration as being either "sufficient" and/or "necessary."

//

//

//

//

12

For all of the foregoing reasons, we urge the Court to impose a non-custodial sentence, with such other conditions as the Court may deem appropriate.

Dated: February 3, 2021              Respectfully submitted,

<u>s/Stanley I. Greenberg</u>
Stanley I. Greenberg
Attorney for Defendant
Jumsher Saroya